996 F.2d 1220
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephanie M. LAMPONE, Defendant-Appellant.
 No. 92-3963.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 8, 1993.*
Decided June 11, 1993.
 
 Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.
 
 Order
 
 1
 Stephanie Lampone pleaded guilty to a cocaine offense. The district court calculated her base offense level at 18, reducing it by two levels for acceptance of responsibility. The resulting offense level of 16, combined with a criminal history category of I, yielded a sentencing range of 21 to 27 months. The court imposed a term of 25 months. Lampone contends that the district court should have lowered her offense level in acknowledgment of her mitigating role in the offense as well as for her timely acceptance of responsibility.
 
 
 2
 First she argues that the district court erred by denying her a reduction for a "mitigating role". Section 3B1.2 of the Sentencing Guidelines in effect after November 1, 1992, permits a four-level reduction for a "minimal" participant, a two-level decrease for a "minor" participant, and a three-level reduction for intermediate cases. At sentencing her attorney stated he "probably would strain the credibility [sic] of the court to move for a four-point reduction." On appeal she does not really press the point that she is entitled to a two- or three-level reduction so much as she contends that the district court failed to make adequate findings of fact. But when the record provides "more than an adequate foundation" for a conclusion, the district court need not articulate specific reasons for denying the defendant the credit she requests. United States v. Blas, 947 F.2d 1320, 1330 (7th Cir.1991) (refusal to reduce offense level for acceptance of responsibility under § 3E1.1), cert. denied, 112 S.Ct. 1234 (1992). But see United States v. Scroggins, 939 F.2d 416, 424 (7th Cir.1991) (remand for resentencing because court considered reduction under minimal but not minor participant standard).
 
 
 3
 The Sentencing Commission defines a minor participant as one "who is less culpable than most other participants, but whose role could not be described as minimal." Application Note 3 to § 3B1.2. Cf. Stinson v. United States, 113 S.Ct. 1913 (1993). More restrictively, the Background of § 3B1.2 permits adjustments for a defendant whose part in the offense makes his "substantially less culpable than the average participant." Lampone was less culpable than her partner in crime, the "average" and only other participant. Their sentences reflect their different degrees of involvement. His base offense level was 26, hers 18. Be that as it may, she is not necessarily a "minor" player automatically entitled to a reduction. Cf. United States v. Moore, No. 92-2730, slip op. at 9 (7th Cir. Apr. 14, 1993) (being among least guilty of all defendants does not a fortiori make one a minimal or minor participant in conspiracy); United States v. Miller, 891 F.2d 1265, 1271 (7th Cir.1989). In an effort to show that some drug dealers' significant others have earned a reduction for minor-participant status, Lampone summarizes "some select boyfriend-girlfriend cases". Comparing herself to these others, however, misses the point of § 3B1.2, which "requires us to focus on the defendant's 'role in the offense,' rather than unspecified criminal conduct that is not part of the offense." United States v. Valencia, 907 F.2d 671, 687 (7th Cir.1990) (quoting § 3B1.2). See also United States v. Cea, 963 F.2d 1027, 1032 (7th Cir.1992). For that reason, a district court's consideration of the issue is "heavily dependent upon the facts of the case." Background to § 3B1.2. See also United States v. Johnson, 965 F.2d 460, 469 (7th Cir.1992).
 
 
 4
 Lampone lived with David Lopez, her confederate in crime. On one occasion when Lopez was not at home, Lampone directed an informant to a one-ounce bag of cocaine in the corner of the garage. This informant had been acquiring cocaine from Lopez for about three years. Before going to the home of Lopez and Lampone, the informant would call ahead to see if cocaine were available. He always spoke in coded terms with Lampone. She feared the phones were bugged. When accompanying Lopez to the restaurant where an agent purchased two ounces of cocaine for $4,000, Lampone discussed the price of the drug ("We used to pay 800") and asserted that the informant was receiving a fair deal ("[I]t ain't like we're trying to fuck you.... We came down 100.").
 
 
 5
 Another incident is in dispute. The informant asserted that Lampone once stopped her car so that the informant, following in another vehicle, could retrieve an ounce of cocaine from the trunk of Lampone's car. Lampone denies that this occurred. At the sentencing hearing, the informant vacillated on whether Lampone was the driver of the vehicle. In preparation for trial some weeks earlier, however, he had told government agents that Lampone was indeed the driver. At sentencing the district court found the informant's testimony incredible, implicitly favoring the version of events he had related to agents. Even if one is to disregard the vehicle rendezvous, the record contains evidence sufficient to sustain the district court's denial of a two-point reduction. While Lampone may never have bought, sold, used, or possessed cocaine, she was no minor participant in the criminal activity taking place under her own roof. Cf. United States v. Tholl, 895 F.2d 1178, 1186 (7th Cir.1990) (court refused minor-participant reduction "simply because he did not concoct this scheme or take the lead...."); United States v. Perry, 747 F.2d 1165, 1169 (7th Cir.1984) ("[I]t strikes us as incredible that [a drug dealer] would have a person accompany him to a drug deal ... where that person did not have [the dealer's] utmost trust and confidence.").
 
 
 6
 Lampone also contends that the district court erred by determining that she was not entitled to an additional one-point reduction for acceptance of responsibility pursuant to § 3E1.1(b) of the Guidelines. Again, the thrust of her argument is that the district court failed to make adequate findings on the issue. We repeat that if the record supports the judge's decision, he need not lay out in detail the specific reasons for refusing to find acceptance of responsibility. United States v. Beal, 960 F.2d 629, 635 (7th Cir.), cert. denied, 113 S.Ct. 230 (1992).
 
 
 7
 Section 3E1.1(b) provides an additional one-level decrease if (1) the defendant qualifies for a two-level decrease under § 3E1.1(a); (2) the offense level determined prior to the operation of subsection (a) is level 16 or greater; and (3) the defendant timely provided complete information to the government about his involvement in the offense or notified authorities of his intent to plead guilty in a timely manner, "thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." U.S.S.G. § 3E1.1(b).
 
 
 8
 Lampone meets the first two requirements. The plea agreement, filed on September 21, 1992, contemplated the two-level adjustment. Her offense level is above 16. But the district court found it "obvious that [the plea was] not timely." By the time Lampone entered her plea, the government had begun its preparations for trial. Lampone explains that she could not have entered a knowing and voluntary plea before she had a chance to review the transcripts of the taped encounter at the restaurant. The tapes themselves, to which she had access well in advance of trial, were inaudible. She claims that she pleaded guilty when she did only because the government belatedly provided the transcripts a week before the scheduled trial date.
 
 
 9
 Blaming the government for her untimely plea will not wash. We find it difficult to believe that Lampone needed to read a transcript before taking responsibility for her actions. If indeed she was ready to accept responsibility, she needed no evidence. The delay implies that Lampone resisted until conviction became inevitable. Knuckling under to adverse evidence is some distance from a genuine acceptance of responsibility. The point of the additional one-level reduction is to encourage an early guilty plea. Background to § 3E1.1. Lampone's case can be distinguished from one in which a defendant pleads guilty the day before trial but has provided previously, as § 3E1.1(b) requires, "complete information to the government concerning his own involvement in the event." Lampone's first statement about her involvement came after she entered her plea of guilty and during the preparation of the presentence report. In short, her timing does not show her to have "accepted responsibility in a way that ensures the certainty of [her] just punishment in a timely manner...." Background to § 3E1.1. Her plea, coming as it did only after she saw her incriminating remarks in stark typeface, smacks more of expediency than contrition. Having generously given Lampone a two-level reduction despite this delay, the district judge did not commit clear error in denying a third.
 
 
 10
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record