**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David B. SULLIVAN, Defendant–Appellant.**

**No. 89–2459.**

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1990.

Decided Oct. 23, 1990.

John W. Vaudreuil, Daniel P. Bach, Asst. U.S. Attys., Madison, Wis., for plaintiff-appellee.

Ralph A. Kalal, Kalal & Habermehl, Madison, Wis., for defendant-appellant.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant David Sullivan appeals from a sentence imposed for violating Section 18 U.S.C. § 875(c), transmitting a

threat to injure in interstate commerce. The district court determined at sentencing that Sullivan was not entitled to a two-point diminution of offense level under § 3E1.1 of the Federal Sentencing Guidelines for "acceptance of responsibility" because he failed to alleviate the stress he caused the victim through his threats and because he had not accepted responsibility for his conduct. Sullivan argues on appeal that the district court denied him the opportunity to alleviate the stress he caused the victim when it issued a temporary detention order prohibiting him from initiating any direct or indirect phone contact with the victim except through his counsel. We affirm the conviction but set aside the sentence and remand to the district court to allow the court to more fully delineate and explain its reasoning for denying Sullivan the two-level reduction for "acceptance of responsibility."

## I.

On January 12, 1989, David Sullivan placed two threatening telephone calls from the Stephenson County Jail in Freeport, Illinois, to Monroe, Wisconsin, to Virginia Windsor, age 68.[1] Sullivan demanded that Virginia Windsor provide him with $2,500 in cash for his bail or he would cause some type of accident to her or members of her family. Virginia Windsor had come in contact with Sullivan when he was incarcerated with her son at the Wisconsin State Prison in Waupun, Wisconsin, several years earlier. Since the time of Sullivan's release from Waupun State Prison in April of 1988, Virginia Windsor had given Sullivan approximately $65,000 after he told her that he needed the money to buy his way out of a satanic church.

Some six days later, on January 18, 1989, Sullivan had a fellow inmate, Robert Kishbaugh, contact Renee Boettner, a resident of Freeport, Illinois. Kishbaugh asked her to read a message over the phone to Virginia Windsor which included another demand for Sullivan's bail money and a reiteration of the previous threats. Boettner contacted the Stephenson County Sheriff's

Department later that day and agreed to cooperate and tape a second telephone call expected from Kishbaugh and Sullivan during the evening hours of that same day. Sullivan contacted Boettner at approximately 6 p.m. and requested that she make a threatening call to Virginia Windsor. This conversation was recorded by the Stephenson County Sheriff's Department. The next day, Sullivan was interviewed by investigators from the Monroe County Sheriff's Department and the Stephenson County Sheriff's Department. Sullivan at first denied making the telephone call to Renee Boettner the previous day until he was confronted with a tape recording of the call. Sullivan then admitted asking Renee Boettner to relay his threat to Virginia Windsor to induce her to provide his bail money. Sullivan also admitted that he had previously made two threatening phone calls to Virginia Windsor on January 12 in an attempt to get her to provide him with $2,500 bail money. Sullivan admitted to the investigators that the threats to have people close to Virginia Windsor physically hurt or killed were intended and that he was confident Virginia Windsor knew his threats were real.

After unsuccessfully trying to obtain bail money from Virginia Windsor on three occasions, Sullivan sought the assistance of another inmate, who posted his bail. Sullivan told the inmate that he had the money in a safe deposit box in Monroe, Wisconsin, and would repay him. The two went to Monroe, and while the inmate waited in a car in front of the bank, Sullivan slipped out the back door without repaying the inmate.

Sullivan was indicted for violating 18 U.S.C. § 875(c):

"Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined no more than $1,000 or imprisoned not more than five years, or both."

---

1. Sullivan had been incarcerated in the Stephenson County Jail since December 3, 1988.

The government also requested and was granted a temporary restraining order by the magistrate prohibiting Sullivan from "initiating any direct or indirect phone contact with Virginia Windsor except through his counsel."

Sullivan was charged with transmitting a communication in interstate commerce containing a threat of injury to another person, with the intent to extort money, and on May 8, 1989, pled guilty to violating 18 U.S.C. § 875(c). Sullivan's presentence report recommended that the defendant-appellant receive a two-point upward adjustment in the sentencing level because he was aware of the fact that Virginia Windsor was particularly vulnerable to fear of threats due to her mental condition as well as her age. Additionally, the presentence report recommended a downward adjustment of two points for his "acceptance of responsibility" because of his confession to investigators regarding the threats he made to Virginia Windsor. As part of a plea agreement the government agreed with the defendant-appellant's position that he had accepted responsibility for his conduct. However, the district court denied Sullivan the two-level reduction, concluding that he "failed to merit reduction for acceptance of responsibility." Consequently, Sullivan was sentenced to 41 months in prison followed by a three-year period of supervised release.

## II.

The single issue before this court is whether the district court's refusal to grant Sullivan a two-point reduction for "acceptance of responsibility" pursuant to section 3E1.1 of the Sentencing Guidelines ("Guidelines") was proper. At the outset, we note that our review of this issue is limited by the "clearly erroneous" standard:

"Whether or not a defendant has accepted responsibility for his crime is a factual question. The district court's determination of that question ... enjoys the protection of the 'clearly erroneous' standard. Because the trial court's assessment of a defendant's contrition will de-

pend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area."

*United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989). This court, in a similar factual situation involving the Guidelines, noted that a district court's sentence will be affirmed "if it results from a proper application of the sentencing guidelines to facts not found to be clearly erroneous." *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989). Furthermore, the Application Notes to § 3E1.1 also describe the standard of review:

"The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."

Section 3E1.1, *United States Sentencing Guidelines,* Application Notes.

■ Section 3E1.1, *United States Sentencing Guidelines,* provides for a decrease of two levels in the base offense level "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The district court found that Sullivan did not merit a two-point reduction for "acceptance of responsibility" and stated:

"[T]he defendant has done nothing to diminish the psychological harm which he has caused. A combination of the defendant's extensive criminal conduct since 1976 and the continued psychological harm suffered by the victim for which the defendant has failed to remedy convinces the Court that it cannot provide the defendant with a two-point reduction for acceptance of responsibility. There is no indication to suggest that he has withdrawn from former criminal conduct or associations nor that he plans to do so in the future."

Sullivan argues on appeal that the district court did not explain its reasoning in denying him a two-point reduction for "acceptance of responsibility." We agree.

The Application Notes following § 3E1.1 of the Guidelines sets forth a non-inclusive list of considerations that a court may use in determining whether a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Several relevant considerations include: (1) voluntary termination or withdrawal from criminal conduct or associations; (2) voluntary and truthful admission to authorities of involvement in the offense and related conduct; (3) voluntary surrender to authorities promptly after commission of the offense; and (4) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility. Because the statements in the transcript fail to set forth his reasoning, we have some doubt as to whether the trial judge considered these factors when denying Sullivan the two-point reduction. The district court stated that it did consider the entire record but failed to specifically address any of the factors set forth in the Application Notes to the Guidelines. Apparently, the district court relied on Sullivan's failure to "diminish the psychological harm which he caused" Virginia Windsor as a critical factor in determining that he was not entitled to a two-point reduction. However, because of the sparsity of the record on this point, it is difficult for this court sitting in review to determine what the district court believed Sullivan might have done to alleviate the stress which he caused Virginia Windsor given the fact that he was prohibited by court order from initiating any direct or indirect contact with her except through his counsel. Therefore, we are at a loss to understand why the trial court seems to have focused almost exclusively on Sullivan's failure to apologize to Virginia Windsor in denying him a two-point reduction when the initiation of any phone contact with her could have led to further legal action against him.

Nonetheless, we are convinced that there is other evidence in the record that the district court could have relied on to deny the two-point reduction. For example, the record indicates that Sullivan did not necessarily make "voluntary termination or withdrawal from criminal conduct." When initially approached by investigators, Sullivan denied all allegations of threatening Virginia Windsor. He also continued his criminal conduct of fraud, threat and/or deceit when tricking another inmate into putting up his bail after Virginia Windsor refused to accommodate him. Furthermore, Sullivan's withdrawal from criminal conduct was not timely because he made the initial phone call to Virginia Windsor on January 12, 1989, and then on January 18, 1989, he called and convinced another individual to telephone Virginia Windsor with an additional threat and denied this activity until a tape recording of the conversation was replayed back for him.

While the district court briefly noted that it did not appear that Sullivan had "withdrawn from former criminal conduct," it failed to delineate any specific examples in the record of conduct that would support a denial of the two-point reduction for "acceptance of responsibility." Indeed, the extent to which the district court's denial of "acceptance of responsibility" diminution was motivated by factors other than Sullivan's failure to apologize to Virginia Windsor is not clear from the record of the district court's sentencing remarks.

As noted above, this Court is limited by the "clearly erroneous" standard in reviewing a district court's sentencing procedure. *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989). However, it is incumbent upon the trial court to provide an explanation of the factors it relied on in reaching its decision to enable this Court to fulfill its review function. The district court stated that it relied on the entire record for its denial of the two-point reduction, but articulated only the fact that Sullivan failed to diminish the psychological harm that he caused Virginia Windsor. Given that Sullivan was prohibited from initiating any phone contact with Virginia Windsor except through counsel, the district court's conclusory statement that it relied almost exclusively on Sullivan's failure to alleviate the stress he caused her in denying him the two-point reduction lacks

merit. Furthermore, the district court failed to address in detail other factors noted in the Guidelines that would support a denial of the two-point reduction for "acceptance of responsibility." We affirm Sullivan's conviction, vacate the sentence and remand the case to the district court for resentencing in conformity with the opinion.